IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

WILLIAMS MULLEN,                 )
                                 )
      Plaintiff,                 )
                                 )
      v.                         )     1:10cv262 (JCC/TCB)
                                 )
UNITED STATES ARMY CRIMINAL      )
INVESTIGATION COMMAND,           )
                                 )
      Defendant.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant United
States Army Criminal Investigation Command's Motion to Vacate
the Court's Amended Scheduling Order, Motion to Set a Summary
Judgment Briefing Schedule, and Motion for Leave to File a
Representative Sampling.  For the following reasons, the Court
will grant the Motion to Vacate the Court's Amended Scheduling
Order and grant in part the Motion to Set a Summary Judgment
Briefing Schedule and Motion for Leave to File a Representative
Sampling.

**I.  Background**

This case arises out of an alleged illegal withholding
of records by Defendant United States Army Criminal
Investigation Command (USACIDC or Government).  Plaintiff
Williams Mullen filed a complaint to compel production of

certain documents in USACIDC's possession relating to its clients--Unconventional Concepts, Inc. (UCI) and Michael J. Hopmeier--under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Plaintiff filed its original FOIA request on July 31, 2007. (Compl. ¶ 5; Ex. A.) USACIDC denied that request on October 16, 2007, citing an active investigation regarding UCI and Mr. Hopmeier. (Compl. ¶ 8; Ex. 3.) After Mr. Hopmeier allegedly learned that investigation was complete, on July 7, 2009, Plaintiff resubmitted its FOIA request on August 31, 2009. (Compl. ¶ 10; Ex. 5.) USACIDC denied it on September 29, 2009, again citing an active investigation. (Compl. ¶ 11; Ex. 6.) Plaintiff appealed to the Army Office of General Counsel (Army OGC), but the Army OGC affirmed the decision on January 8, 2010, again citing the investigation. (Compl. ¶¶ 12, 14; Ex. 8.) Plaintiff requested by letter that the Army OGC reconsider on January 26, 2010, but received no response. (Compl. ¶ 15; Ex. 9.)

On March 17, 2010, Plaintiff filed its first Complaint against USACIDC for alleged FOIA violations. (Compl. ¶¶ 16-17); [Dkt. 1.] On May 4, 2010, the Court issued a scheduling order (the Scheduling Order) directing the parties to finish discovery by September 10, 2010. [Dkt. 10.] On May 14, 2010, Defendant moved to vacate the Scheduling Order and to stay the proceedings

for ninety days to allow it time to review and release documents previously withheld due to the investigation.  [Dkts. 11-12.]

Those documents fell into three categories: documents from a 2005 investigation, the 2006 report of investigation (the 2005 Materials and 2006 Materials), and approximately 37,000 pages of field files from the investigation (the Field Files). (D. Mem. in Supp. Mot. Stay [Dkt. 29] (D. Mot. Stay) at 3.) Defendant provided a cost estimate for production of these files and twice asked for confirmation that Plaintiff would pay the cost.  *Id.*  Plaintiff initially refused but later agreed to pay for production of the 2005 Materials and 2006 Materials.  (D. Mot. Stay at 4.)

Per Defendant's request, the Court issued an Order on June 14, 2010, staying proceedings until September 12, 2010 (the Stay).  [Dkt. 27.]  USACIDC then produced redacted copies of both sets of documents on June 11, 2010, and June 25, 2010, respectively, but, at Plaintiff's request did not produce the Field Files.  (D. Mot. Stay at 5.)  Six weeks later, on July 28, Plaintiff requested production of the Field Files.  (Mot. Stay at 5.)  The Court then granted several enlargements of the stay period to allow USACIDC to continue processing and releasing the responsive documents.  [Dkts. 40, 43, 46, 51, 54.]  The last order granting a stay was on August 8, 2011, and it extended the time for production an additional sixty days--until October 7,

2011 (the Final Stay Order).  [Dkt. 54.]  The Final Stay Order instructed Plaintiff to either file an amended complaint stating what remains to be litigated or file a stipulation of voluntary dismissal at the close of the stay.  [Dkt. 54.]  It also stated that "should an amended complaint be filed, the parties will thereafter work to propose a summary judgment briefing schedule to the Court."  [Dkt. 54.]

On August 8, 2011, USACIDC advised the Court that it had completed production of responsive documents on August 5, 2011.  [Dkt. 52.]  Yet, Plaintiff received another set of documents on October 4, 2011.  [Am. Compl. ¶ 16.]  USACIDC submits that as recently as November 2, 2011, it identified and released additional pages of responsive documents (D. Mem. [Dkt. 61] at 2) and Plaintiff confirms that on November 3, 2011, it received approximately 181 additional pages (P. Opp. [Dkt. 64] at 5).  The Government now states that it is unaware of any additional document corrections to its release.  (D. Mem. at 2.) At this point in time, Defendant has released more than 41,000 pages of responsive documents, approximately 23,763 of which have been redacted or withheld in full.  (D. Mem. at 3.)

Believing that production was completed on August 5, 2011, on August 10, 2011, Plaintiff requested via email correspondence that USACIDC provide a *Vaughn* Index (the *Vaughn*

Index or Index).[1]  [Dkt. 55 Ex. B.]  The Government responded

that it would produce a *Vaughn* Index with a summary judgment

briefing scheduling order.  [Dkt. 55 Ex. C.]  Plaintiff replied

that it sought to avoid compelling the production of the Index

through a Court hearing, and that only after reviewing the Index

could it determine to voluntarily dismiss the case or file an

amended complaint objecting to the Government's withholdings.

[Dkt. 55 Ex. D.]  The parties continued to exchange

communication about the Index, but were unable to come to an

agreement regarding its production.  [Dkt. 55 Exs. D-F.]

        As a result of their inability to come to an agreement

on a *Vaughn* Index, and the continued production of documents,

Plaintiff filed an Amended Complaint on October 7, 2011.  [Dkt.

55.]  Plaintiff now seeks the production of all records

responsive to the July 31, 2007, and August 31, 2009, FOIA

requests, the production of a full *Vaughn* Index, and attorneys'

fees and other litigation costs.  (Am. Compl. [Dkt. 55] ¶ 19.)

        On November 1, 2011, this Court issued an Amended

Scheduling Order (the Amended Scheduling Order), requiring the

parties to file proposed discovery plans one week before the

Rule 16(b) pretrial conference on November 30, 2011.  [Dkt. 58.]

On November 3, 2011, Defendant filed its Motion to Vacate the

---

[1] "A *Vaughn* index is a list describing the documents an agency [has withheld]. The list must include sufficiently detailed information to enable a district court to rule whether the document falls within a FOIA exemption." *Rein v. USPTO*, 553 F.3d, 353 n. 6 (4th Cir. 2009).

Amended Scheduling Order.  [Dkt. 59.]  Defendant also filed a Motion to set a Summary Judgment Briefing Schedule [Dkt. 63] and a Motion for Leave to File a Representative Sampling [Dkt. 60].

On November 14, 2011, Plaintiff filed opposition to Defendant's motions.  [Dkt. 64.]  Defendant filed its reply on November 17, 2011.  [Dkt. 65.]

Defendant's motions are now before the Court.

### III.  Analysis

As the Fourth Circuit has noted, "FOIA was enacted as a general disclosure statute pertaining to all federal records." *Bowers v. DOJ*, 930 F.2d 350, 353 (4th Cir. 1991).  However, "Congress 'realized that legitimate governmental and private interests could be harmed by release of certain types of information.'"  *Id.* at 353-54 (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).  It therefore created certain exemptions to disclosure under FOIA, but nevertheless required that such exemptions "be narrowly construed."  *Hunton & Williams v. U.S. DOJ*, 590 F.3d 272, 276 (4th Cir. 2010) (citing *Bowers*, 930 F.2d at 354).  FOIA places the burden on the government agency to sustain its action to withhold information under any of the FOIA exemptions.  *Wickwire Gavin, P.C. v. USPS*, 356 F.3d 588, 591 (4th Cir. 2004).

Once a requestor of information files a judicial challenge to an agency's denial of its FOIA request, "a district

court must make a de novo determination of whether government records were properly withheld under an FOIA exemption provision." *Willard v. IRS*, 776 F.2d 100, 102 (4th Cir. 1985). The government can meet its burden to demonstrate that the withheld material was exempted from disclosure by "describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Hanson v. USAID*, 372 F.3d 286, 290 (4th Cir. 2004)(citing *Miscavige v. IRS*, 2 F.3d 366, 367-68 (11th Cir. 1993)).

### A.   Motion to Vacate Discovery Order

The Government requests that the Court vacate its Amended Scheduling Order governing discovery and set a summary judgment briefing schedule.  [Dkts. 59, 63.]  USACIDC argues that the Amended Complaint presents questions of law regarding whether documents were properly withheld under FOIA exemptions and that such questions should be resolved on motions for summary judgment.  (D. Mem. at 3-4.)  Plaintiff counters that discovery is appropriate in this case because Defendant has not submitted any evidence of the procedures it used to identify and produce the documents, or any evidence establishing that it properly withheld information pursuant to FOIA exemptions.  (P. Opp. at 6.)  Thus, what is initially at issue in this case is a question this Court has already considered: "whether or not discovery is appropriate prior to the government filing a motion

for Summary Judgment explaining the appropriateness of its decisions." *Thompson v. United States,* No. 1:09cv1246, 2010 WL 231782, at *2 (E.D. Va. Jan. 19, 2010).  Absent unusual circumstances, it is not.  *See id.* at *2-3.

In the Fourth Circuit, the applicability of FOIA exemptions "and other FOIA determinations should be resolved on summary judgment." *Hanson,* 372 F.3d at 290.  "In order to prevail on its motion for summary judgment, the [government] must establish that it performed a proper search for documents responsive to plaintiff's requests." *Wickwire Gavin, P.C. v. Def. Intelligence Agency*, 330 F. Supp. 2d 592, 596 (E.D. Va. 2004).  And, whether a given document properly falls within the scope of one of the statutory exemptions is a question of law. *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994).  Thus, the Court can properly evaluate Plaintiff's concerns about production procedures and FOIA exemptions after the Government has filed its summary judgment motion explaining its decisions.

This Court has previously recognized that "'[d]iscovery in FOIA is rare' and 'only appropriate when an agency has not taken adequate steps to uncover responsive documents.'" *Thompson,* 2010 WL 231782 at *3 (citing *Schrecker v. DOJ,* 217 F.Supp.2d 29, 35 (D.D.C. 2002).  Plaintiff submits many cases supporting the fact that discovery is at times appropriate in FOIA cases, but fails to demonstrate that

discovery is proper at this point in the case.  The cases
Plaintiff cites address whether courts should have granted
particular summary judgment motions, not whether discovery
should have been conducted *prior to the filing* of motions for
summary judgment.  *See Local 3, Int'l Bhd. of Elec. Workers v.
NLRB,* 845 F.2d 1177, 1179 (2d Cir. 1988) *(*affirming the district
court's grant of summary judgment denying plaintiff's request
for discovery); *Weisberg v. DOJ,* 627 F.2d 365, 371 (D.C. Cir.
1980) (reversing the district court's grant of summary judgment
because "issues genuinely existed as to the thoroughness of the
FBI search" and "summary judgment [should be] predicated in part
on a finding that the document search was complete"); *Phillippi
v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976)(reversing district
court's grant of summary judgment because the government should
have provided a public affidavit addressing the requested
records).  That the Government may fail to meet its burden at
the summary judgment stage, is not a reason to order discovery
in FOIA cases before the Government has had the opportunity to
meet that burden.

　　　　In reviewing cases where courts supported discovery
prior to summary judgment, this Court has noted the
distinguishing presence of "'bad faith' or 'malfeasance' on the
part of the government in its delayed response to FOIA
requests."  *Id.* (citing *Citizens for Responsibility & Ethics in*

*Wash. v. U.S. DOJ*, No. 05-2078, 2006 U.S. Dist. LEXIS 34857, 2006 WL 1518964, at *3 (D.D.C. June 1, 2006); *Judicial Watch, Inc. v. Dep't of Commerce*, 127 F. Supp. 2d 228 (D.D.C. 2000)). Plaintiff submits that there is evidence that one of the government agencies involved in this matter demonstrated bad faith in handling responsive documents.  (P. Opp. at 8.) Specifically, Plaintiff argues that an email produced pursuant to a different FOIA request indicates an attempt to manipulate documents that are responsive to the requests in this case.  (P. Opp. at 8-9.)  Assuming for the moment that Plaintiff is correct, that piece of evidence is not the type that would alone necessitate discovery prior to summary judgment.[2]  *See Citizens for Responsibility & Ethics in Wash.*, 2006 U.S. Dist. LEXIS 34857 at *9-10 (finding that discovery was appropriate because the government had not produced a "single responsive document" and there were questions about whether the government "processed its FOIA requests in a reasonable and expeditious manner").

Thus, for the reasons stated above, the Court will grant Defendant's Motion to Vacate the Court's Amended Scheduling Order [Dkt. 59].

B.   Summary Judgment Briefing Schedule

Turning next to the summary judgment briefing schedule, USACIDC requests that the *Vaughn* Index be filed with

---

[2] The single email that Plaintiff suggests indicates bad faith was produced pursuant to a different FOIA request in a different case and it is not clear it involves documents that are even responsive in this case.

its motion for Summary Judgment 90 days from the issuance of the Court's order on this matter.  Defendant proposes that Plaintiff would then have 30 days file its cross motion for summary judgment and opposition, and Defendant would have 21 days to file a reply.  (D. Mot. SJ [Dkt. 63] at 1.)  There is no dispute that a *Vaughn* Index is necessary in this case or that the Government should provide one.  However, the parties dispute the appropriate timing of the production of the Index and its scope.

### a. Timing of *Vaughn* Index

Turning first to the timing of the production of a *Vaughn* Index, USACIDC seeks to file its *Vaughn* Index with, and in support of, its motion for summary judgment.  (D. Mem. at 6.)  Plaintiff requests the *Vaughn* Index "at least three months before filing for summary judgment."  (P. Opp. at 12.)

This Court has previously approved of the government's filing of a *Vaughn* Index with the filing of a summary judgment motion.  *See Thompson,* 2010 WL 231782 at *3.  It is neither necessary, nor often efficient, however, for the government to wait until the filing of a summary judgment motion to produce an Index.  Often an Index is provided upon the plaintiff's request, prior to the filing of any summary judgment motions.  *See Gavin v. Def. Intelligence Agency*, 330 F.Supp.2d 592, 595 (E.D. Va. July 26, 2004).  *See also Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 736-737 (E.D. Va. 2005)(demonstrating that

11

motions for summary judgment are not necessary when the Index is produced and the plaintiff decides to dismiss the case).

When, however, the parties cannot come to an agreement on a voluntary production of the Index, the Court is often called to act.  This Court recognizes that "[r]egarding the issue of when during litigation a *Vaughn* Index should be filed, i.e., at the summary judgment stage or earlier, there is no general consensus among the courts that have considered the issue."  *Keeper of the Mts. Found. v. U.S. DOJ*, No. 2:06-cv-00098, 2006 U.S. Dist. LEXIS 39915, at *6 (S.D. W. Va. June 14, 2006).

In assessing the timing of the filing of the Index, courts have considered whether the government has indicated that it plans to file a dispositive motion.  In *Providence Journal Co. v. U.S. Dep't of Army*, 769 F. Supp. 67, 68-69 (D. R.I. 1991), the court granted plaintiff's motion for a *Vaughn* Index prior to summary judgment because it found the argument that court should wait until government files a dispositive motion "insufficient and sterile" in light of fact that government had not even indicated when it would file such a motion.  Here, USACIDC submits that it will file an Index with its motion for summary judgment and so there is no concern that the Court would be waiting for an event that may not occur.

Courts that hold the Index should be filed *after* the filing of dispositive motions reason that "[t]he filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents." *Stimac v. DOJ*, 620 F. Supp. 212, 213 (D. D.C. 1985). Again, this concern is not present here since USACIDC seeks to file the Index with its motion for summary judgment.

Courts that hold that the Index should be filed *before* the filing of dispositive motions reason that access to the Index at an earlier stage in the litigation is "the more efficient and fair approach." *Keeper of the Mts. Found.,* 2006 U.S. Dist. LEXIS 39915 at *8. Courts have found that "[i]n light of both the passage of time since the initial request and the purpose of the *Vaughn* index to educate both the requester and the Court, [] it would be unfair to allow the [d]efendants months to prepare their case and then force [p]laintiff to formulate its entire case within the two weeks it has to respond to the motion." *Cal. ex rel. Brown v. EPA*, No. C 07-02055, 2007 U.S. Dist. LEXIS 66036, at *6 (N.D. Cal. Aug. 27, 2007); *see also Cal. ex rel. Brown v. U.S. EPA*, No. C-08-0735 SC, 2008 U.S. Dist. LEXIS 62528, at *9-10 (N.D. Cal. Aug. 1, 2008)(holding that "it is more appropriate for the EPA to produce the *Vaughn* index now and allow Plaintiff to review it prior to summary judgment"); *Hansen v. U.S. Dep't of Air Force*, 1991 U.S. Dist.

13

LEXIS 4934, No. 91-0099-LFO, 1991 WL 199748, at * 1 (D.D.C. 1991) (granting motion for a *Vaughn* index and finding it unfair to allow the government four months to file a dispositive motion and then allow the opposing party only two weeks to formulate their entire case and respond to that motion).

Turning to fairness and efficiency concerns in this case, Plaintiff argues that "[i]t would be inequitable to allow Defendant almost two years to complete its case and only give Plaintiff a month to formulate its response." (P. Opp. at 12.) Defendant's motion comes on the heels of a document production that has continued for well over a year. The Court granted USACIDC the initial stay to process documents on June 14, 2010, and USACIDC completed its production on November 2, 2011. At this point Defendant has produced more than 41,000 pages of documents, approximately 23,763 of which have been redacted or withheld. (D. Mem. at 3.) Considering the passage of time and the volume of documentation, the Court finds that it would be unfair to require Plaintiff to respond 30 days after Defendant provides a *Vaughn* Index.

The Court believes, however, that it can address concerns of fairness and efficiency with the timing of the summary judgment briefing schedule. As a result, given the current posture of this case, this Court finds that the filing of a *Vaughn* index with Defendant's motion for summary judgment

14

is appropriate.  Thus, the Court will grant in part Defendant's Motion to Set a Summary Judgment Briefing Schedule.  This Court will modify the scheduling order such that Defendant shall file its motion for summary judgment 90 days from the issuance of this Order; Plaintiff shall file a response in opposition 90 days from the filing of Defendant's motion for summary judgment; and, Defendant has 30 days to file a reply brief to Plaintiff's response in opposition.

### b. Scope of *Vaughn* Index

Turning next to the nature of the *Vaughn* Index, Plaintiff seeks a full and complete *Vaughn* Index.[3]  (Am. Compl. ¶ 19.)  Defendant requests that this Court permit it to file the Index based on a sampling.  (D. Mem. at 6.)  Defendant's plan generally proposes that the sampling be based on roughly one percent of the 23,763 pages of responsive documents that have been redacted or withheld in full.  (D. Mem. at 8.)

### i. Representative Sample

The agency bears the burden of demonstrating that requested information comes within a FOIA exemption.  *Spannaus v. DOJ*, 813 F.2d 1285, 1288 (4th Cir. 1987)(citing *FBI v. Abramson*, 456 U.S. 615, 622, 72 L. Ed. 2d 376, 102 S. Ct. 2054 (1982)).  "*Vaughn* requires an agency in denying a request for documents under the Freedom of Information Act to furnish

---

[3] Plaintiff has submitted, however, that it would waive an indexing of information withheld or redacted under Exemptions (b)(6) and (b)(7)(C).  (P. Opp. at 15.)

detailed justifications for exemption claims, itemize and index documents in such a manner as to correlate justifications for refusal to disclose where actual portions of documents are claimed to be exempt." *Bowers v. DOJ*, 930 F.2d 350, 352 (4th Cir. 1991).

"'Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved.'" *In re DOJ*, 999 F.2d 1302, 1318 (8th Cir. 1993)(quoting *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991)). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an in camera inspection. If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Bonner*, 928 F.2d at 1151 (quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977)).

Here approximately 23,763 pages of responsive documents have been redacted or withheld.  Courts have permitted sampling in cases with a much smaller volume of documents than the volume in the case at hand.  *See Rosenfeld v. DOJ*, 57 F.3d 803, 806 (9th Cir 1995) ("It [the FBI] released 4,985 [pages] in redacted form, and withheld 1,652 pages in their entirety."); *In*

16

*re U.S. Dep't of Def.*, 848 F.2d 232, 233 (D.C. Cir. 1988) ("DOD withheld in whole or in part approximately 2,000 pages of documents . . . ."). As a result, a representative sample is appropriate in this case.

ii. <u>Process for Selecting the Sample</u>

The Court turns next to the sample itself, as courts have cautioned that "the technique will yield satisfactory results only if the sample employed is sufficiently representative, and if the documents in the sample are treated in a consistent manner." *Bonner*, 928 F.2d at 1151.

The Government proposes three different sampling plans that depend on the subset of documents. For the 2005 investigation, 2006 report of investigation, and the 2006 investigation's field files, there are a total of 39,571 pages, approximately 23,425 of which have been redacted or withheld in full. (D. Mem. at 8.) USACIDC requests the sample draw from approximately one percent of the 23,425 pages. One percent of 23,425 is approximately 235 and USACIDC submits that, starting with bates stamp page one, it will index every 165th page in order to obtain those 235 pages. The number 165 is obtained by dividing the full universe of pages--39,571--by 235. (See D. Mem. at 9.) Thus, when Defendant produces its Index it will be producing every 165th page from the full universe of pages, i.e., pages produced, pages withheld, and pages redacted. As a

17

result, Defendant submits that if the 165th page is part of a
document that was released in full, "then the first redacted or
withheld document following the 165th page will be included in
the representative sample."  (D. Mem. at 9.)

For the agent activity summaries, Defendant proposes
that three pages--the first, eighty-second, and 162nd pages--
from the approximately 162 pages of documents would be indexed.
(D. Mem. at 9.)  For the 2005 investigation, 2006 report of
investigation, the 2006 investigation's field files, and agent
activity summaries, the Index would describe the basis for
withholding not only the specific page, but for the entire
document that encompasses that page.  (D. Mem. at 8.)  Finally,
a categorical *Vaughn* Index would be prepared for the
approximately 176 pages of registered source documents that were
withheld in full because these documents were all withheld on
the same basis.  (D. Mem. at 9.)

### 1. Representative Selection

Plaintiff argues that this methodology "merely
provides a 'random sampling' of its withholdings rather than a
'representative sampling.'"  (P. Opp. at 15.)  Plaintiff points
out that under the Defendant's methodology some of the documents
indexed would only show that USACIDC "withheld individual names
and a signature."  (P. Opp. at 14.)  Plaintiff contends that an
indexing of redactions of individual names and contact

18

information would not constitute a representative sampling, and thus requests a "full and complete *Vaughn* index." (P. Opp. at 15.)

Plaintiff is correct that the methodology outlined by USACIDC randomly selects documents to index, but at a certain point the percentage of documents randomly sampled is high enough that it produces a representative sample. And, here the methodology would pull from all types of files: the 2005 Materials, the 2006 Materials, and the Field Files. If there are documents that only contain redactions of names and signatures in the full universe of documents, it is to be expected that a representative sample would on occasion produce such documents. And there is no requirement that every type of exemption invoked by Defendant must be covered in the Index. *See Weisberg v. DOJ*, 745 F.2d 1476, 1490 (D.C. Cir. 1984)(noting that the appellant complained that the sampling methodology did not provide examples of the [defendant's] use of certain exemptions, but "discern[ing] no error whatever in the [d]istrict [c]ourt's decision to require sampling rather than examining each and every document on which challenged exemptions were claimed"). Courts recognize that where "the number of documents is excessive [] it would not realistically be possible to review each and every one," and thus a sampling procedure may be appropriate. *Id.* at 1483, 1485, 1490 (D.C. Cir.

1984)(affirming the adequacy of *Vaughn* indices in a case where plaintiff received over 60,000 pages of documents and the district court ordered a *Vaughn* Index of every two hundredth document and then a supplemental *Vaughn* index when the first index produced a large number of pages containing no excisions). Thus, the Court believes that the general methodology outlined by USACIDC is capable of creating a representative sample in this case.

## 2. Appropriate Volume of Documents

Finally, turning to the volume of documents that will create a representative sample, the Court finds that an approximately two percent sample of the 23,425 redacted or withheld pages from the release of the documents located in the 2005 investigation, 2006 report of investigation, and the 2006 investigation's field files is sufficient. Considering that there are 39,571 responsive pages in the 2005 investigation, 2006 report of investigation, and the 2006 investigation's field files, every 84th page shall be indexed starting with the page of bates stamp one.[4]  Thus, at a minimum 471 pages shall be indexed.  The Court emphasizes that this is just the minimum, as the index shall describe the basis for withholding not only the specific page, but for the entire document that encompasses that

---

[4] To be clear, the Index shall include pages redacted or withheld pursuant to Exemptions (b)(6) and (b)(7)(C).  Invocation of those exemptions would representative of the full universe of documents and they are to treated the same as any other exemption.

page.  Also, if any of the documents pulled as a result of every 84th page being indexed are documents that were fully released, then Defendant should index the next redacted or withheld document.

For the 162 pages of agent activity summaries, every 40th page shall be selected.  Thus, at least 4 documents will be selected.  The processes described above regarding indexing the entire document and moving to the next redacted or withheld document shall apply.  Finally, the Court approves of a categorical *Vaughn* Index for the approximately 176 pages of registered source documents that were withheld in full since those documents were all withheld on the same basis.

Thus, as described above, the Court will grant in part Defendant's Motion for Leave to File a Representative Sampling.

### IV.   Conclusion

For these reasons, the Court will grant Defendant's Motion to Vacate the Court's Amended Scheduling Order, grant in part Defendant's Motion to Set a Summary Judgment Briefing Schedule, and grant in part Defendant's Motion for Leave to File a Representative Sampling.

An appropriate Order will issue.

|  | /s/ |
| --- | --- |
| November 22, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |