**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **WILLIAMS MULLEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:10cv00262** |
| ) | **(JCC/TCB)** |
| **UNITED STATES ARMY CRIMINAL** ) | |
| **INVESTIGATION COMMAND,** ) | |
| ) | |
| **Defendant.** ) | |

<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the United States Army Criminal Investigation Command (USACIDC),

respectfully submits this memorandum in support of its motion for summary judgment brought

pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

On August 31, 2009, plaintiff, Williams Mullen, through counsel, filed a request with

USACIDC pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking

release of documents related to plaintiff's clients – Unconventional Concepts, Inc. ("UCI") and

Mr. Hopmeier.  USACIDC complied with its obligations under FOIA by conducting a reasonable

search and withholding the responsive documents because UCI and Mr. Hopmeier were the

subjects of a USACIDC investigation that was open and active at the time of the FOIA request.

Plaintiff then appealed USACIDC's denial of its August 2009 FOIA request to the Office of the

General Counsel, Department of the Army ("Army OGC").  Army OGC affirmed USACIDC's

denial of the FOIA request on January 8, 2010, and plaintiff asked that Army OGC reconsider its

decision.  After plaintiff submitted its request for reconsideration, plaintiff filed suit in this Court,

USACIDC closed its investigation, and Army OGC informed plaintiff that, because the investigation was now closed, USACIDC could grant plaintiff's request for reconsideration and begin to release the responsive documents to plaintiff, with redactions made pursuant to applicable FOIA exemptions.

Pursuant to this Court's Orders, in June 2010, USACIDC began releasing the more than 41,000 pages of documents with redactions made pursuant to applicable FOIA exemptions. Upon completion of the release, plaintiff amended its complaint, questioning USACIDC's basis for withholding information and demanding production of all responsive documents, as well as a *Vaughn* index addressing all the documents withheld in full or in part from the release. The Court has since issued a summary judgment briefing schedule, which permits USACIDC to submit a Vaughn index based upon a representative sample of documents.

USACIDC now submits this motion and its accompanying exhibits to support its withholding determinations. With respect to the pages that were either redacted or withheld, USACIDC properly invoked the applicable FOIA exemptions and, where possible, released all segregable material. *See* 5 U.S.C. § 552(b)(3), (b)(4), (b)(5), (b)(6), and (b)(7)(c), (d), (e), & (f). USACIDC's Vaughn index identifies each page within the representative sample of documents that was withheld or redacted and describes the basis for the withholding determination. *Kardelis Dec*. at Attachment J to Defendant's Exhibit ("DEX") 1. Having released the required information and, thereby, complied with FOIA's mandate, USACIDC is entitled to summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I. THE PROCESSING OF PLAINTIFF'S FOIA REQUESTS

**Initiation of the Criminal Investigations Concerning UCI and Hopmeier**

On or about March 6, 2005, USACIDC's Maryland Fraud Resident Agency opened an investigation ("2005 investigation") into allegations that Mr. Michael J. Hopmeier and his company, Unconventional Concepts, Inc. ("UCI"), falsified statements and claims regarding expenditures of government funds advanced to UCI for the performance of work related to a series of cooperative agreements[1] dated between 1997 and 2003. *Kardelis Dec.* at ¶¶ 14, 15 (DEX 1). On or about April 11, 2006, the Boston Fraud Resident Agency opened an investigation ("2006 investigation") into UCI and Mr. Hopmeier after receiving notice from the Maryland Fraud Resident Agency that during the conduct of the 2005 investigation it was determined that UCI may have billed for work not yet completed under contracts with the Soldier Systems Center in Natick, Massachusetts ("Natick") and U.S. Army Medical Research and Acquisition Activity ("USAMRAA") at Fort Detrick, Maryland. *Kardelis Dec.* at ¶ 16 (DEX 1).

**Plaintiff's First FOIA Request**

On July 31, 2007, plaintiff, the law firm that represented UCI and Hopmeier in the FOIA administrative process, submitted a FOIA request to USACIDC for "copies of all records pertaining to Unconventional Concepts, Inc.or Michael J. Hopmeier." *Complaint* (Dkt. No. 1-3), ex. 1. On September 11, 2007, after receipt of plaintiff's FOIA request and Mr. Hopmeier's Privacy Act waiver form, personnel assigned to the FOIA and Privacy Act Division, Crime Records Center, USACIDC, searched the following databases using Mr. Hopmeier's name and social security number, as well as Unconventional Concepts, Inc., as search terms:

---

[1] A cooperative agreement is a specialized contractual instrument that does not permit the awardee to receive any fees or profit and that requires the awardee to submit annual audits to the government.

3

1. The Army Criminal Investigation and Criminal Intelligence System ("ACI2"). USACIDC maintains this system, which contains reports of investigation – but not the accompanying exhibits and signed reports – for all USACIDC cases from 1987 to the present.

2. The Centralized Operations Police Suite ("COPS"). The Army's Office of the Provost Marshall General maintains the COPS, which is an Army-wide database that contains several modules, such as military police reports from 2004 to the present and vehicle registration information.

3. The Defense Central Index of Investigations ("DCII"). The Defense Manpower Data Center maintains DCII, which is a Department of Defense-wide database that contains names of crime victims and subjects of criminal investigations, but does not contain copies of the actual investigations. This system contains Army crime information from 1959 to the present.

4. Automated System Crime Record Center ("ASCRC"). USACIDC's Crime Record Center maintains ASCRC, which contains limited partial data from all Army Criminal Investigation Division ROIs and military police reports from 1971 to the present.

*Kardelis Dec.* at ¶¶ 13, 20 (DEX 1).

The September 11, 2007 search revealed that USACIDC had two open and active investigations involving Mr. Hopmeier and UCI – the 2005 investigation in Maryland and the 2006 investigation in Massachusetts. *Id.* ¶ 20 (DEX 1). USACIDC, therefore, denied plaintiff's FOIA request on October 16, 2007 pursuant to FOIA exemption 7(a), 5 U.S.C. § 552(b)(7)(a). *Id.* ¶¶ 20, 21 (DEX 1); *Complaint* (Dkt. No. 1-5), ex. 3. Plaintiff did not appeal that denial. *Kardelis Dec.* at ¶ 22 (DEX 1).

**Incorporation of the 2005 Investigation into the 2006 Investigation**

4

Effective July 31, 2007, the Boston Fraud Resident Agency assumed investigative responsibility for the allegations against Mr. Hopmeier and UCI, and the Maryland Fraud Resident Agency closed its 2005 investigation on or about October 9, 2007. *Kardelis Dec*. at ¶ 23 (DEX 1). The 2006 investigation incorporated and expanded upon the 2005 investigation and remained open and active. *May 14, 2010 Army OGC Letter* (DEX 2).

### Plaintiff's Second FOIA Request

On September 8, 2009, USACIDC received plaintiff's second FOIA request, dated August 31, 2009, which renewed plaintiff's July 31, 2007 FOIA request. *Id.*; *Kardelis Dec*. at ¶ 24 (DEX 1); *Complaint*, ex. 5 (Dkt No. 1-7). On September 24, 2009, personnel assigned to the FOIA and Privacy Act Division, Crime Records Center, USACIDC, checked on the status of the 2005 and 2006 investigations and found that USACIDC's 2006 investigation into Mr. Hopmeier and UCI, which incorporated the 2005 investigation, remained open. *Kardelis Dec*. at ¶ 25 (DEX 1). Therefore, on September 29, 2009, USACIDC denied plaintiff's renewed FOIA request pursuant to FOIA exemption 7(a), 5 U.S. § 552(b)(7)(a). *Id.* at ¶ 26.

### Plaintiff's FOIA Appeal

Plaintiff appealed the denial in a letter dated October 15, 2009 to the Office of the General Counsel, Department of the Army ("Army OGC"). *Id.* at ¶ 27. On January 8, 2010, Army OGC affirmed USACIDC's basis for denial and, thus, denied the appeal. *Id.* at ¶ 28; *Complaint*, ex. 8 (Dkt. No. 1-10).

### Request for Reconsideration of Denial of FOIA Appeal

In a letter dated January 26, 2010, plaintiff asked that Army OGC reconsider its denial of the appeal. *Id*., ex. 9 (Dkt. No. 1-11); Kardelis *Dec*. at ¶ 30 (DEX 1). In its letter, plaintiff

claimed that the Army OGC "denial is based on inaccurate information that a [USACIDC] investigation of [UCI] or Michael J. Hopmeier is 'ongoing.'" *Complaint*, ex 9 (dkt. No. 1-11) Plaintiff's letter mentioned a settlement agreement that Mr. Hopmeier and the Government signed in an Armed Services Board of Contract Appeals ("ASBCA") case arising out of UCI's and Mr. Hopmeier's alleged fraud.  *Id*., exs. 7 and 9 (Dkt. Nos. 1-9 and 1-11).  Pursuant to CID Regulation 195-2, *Criminal Investigation Activities*, however, the 2006 investigation could not be closed until after February 24, 2010, when the ASBCA dismissed Mr. Hopmeier's ASBCA case with prejudice.  *Kardelis Dec*. at ¶ 30 (DEX 1).  After the ASBCA dismissed UCI's and Mr. Hopmeier's case, USACIDC agents were required to follow up any leads from the ASBCA cases, and the senior agent at the Boston Fraud Resident Agency was required to review the investigation to ensure no further investigation was required.  *Id*.; *May 14, 2010 Army OGC Letter* (DEX 2).

On March 19, 2010, personnel assigned to the FOIA and Privacy Act Division, Crime Records Center, USACIDC, checked on the status of the 2005 and 2006 investigations and found that USACIDC's 2006 investigation into Mr. Hopmeier and UCI, which incorporated the 2005 investigation,  remained open.  *Kardelis Dec*. at ¶ 31 (DEX 1).  USACIDC, however, closed its 2006 investigation shortly thereafter on April 15, 2010.  Id.

## Army OGC's Decision on Plaintiff's Request for Reconsideration

Army OGC notified plaintiff in a letter dated May 14, 2010, that USACIDC had recently closed its investigation into Hopmeier and UCI and was prepared to release the responsive records in its custody and control, subject to redactions necessitated by applicable FOIA exemptions other than exemption 7(a).  *Id*. at ¶ 33; *May 14, 2010 Army OGC Letter* (DEX 2).

6

The responsive documents included the 2005 investigation, which consisted of approximately 1,292 pages; the 2006 ROI, which consisted of approximately 1,104 pages; the 2006 investigation's fourteen boxes of field files, which contained approximately 38, 279 pages; the 2006 agent activity summaries, which consisted of approximately 162 pages of documents; and approximately 204 pages of registered source documents. *Kardelis Dec*. at ¶¶ 34 - 37 (DEX 1). As a result of the amount of responsive documents and the need to refer for release determinations more than 11,000 pages of documents to approximately thirty federal agencies or organizations, Army OGC informed plaintiff that the release would have to occur on a rolling basis. *Id*. at ¶¶ 34 - 36; *Notice* (Dkt. No. 52).

## II.  THE DISTRICT COURT PROCEEDINGS

Plaintiff filed its complaint in this case on March 17, 2010, before USACIDC closed its 2006 investigation. *Complaint* (Dkt. No. 1); *Kardelis Dec*. at ¶ 31 (DEX 1).  Plaintiff generally alleged in its complaint that USACIDC erred in withholding the responsive records pursuant to exemption 7(A) on the ground that there was an ongoing investigation into UCI and Hopmeier. *Complaint* (Dkt. No. 1).  USACIDC filed its answer to plaintiff's Complaint on May 3, 2010. *Answer* (Dkt. No. 9), and the Court issued its standard Scheduling Order on May 4, 2010, commencing discovery. *Scheduling Order* (Dkt. No. 10).  On May 14, 2010, USACIDC filed a Motion to Vacate the Scheduling Order and Stay the Proceedings – which plaintiff opposed – in order to process the more than 41,000 pages of responsive documents and commence release of the documents on a rolling basis. *Motion to Vacate the Scheduling Order and Stay Proceedings* (Dkt. No. 11); *Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Vacate the Scheduling Order and Stay the Proceedings* (Dkt. No. 17); *Reply Memorandum in*

*Support of Defendant's Motion to Vacate the Court's Scheduling Order and Stay the Proceedings* (Dkt. No. 21).  This release of documents included more than 11,000 pages of documents that were referred to approximately thirty federal agencies or organizations for release determinations.  *Kardelis Dec.* at ¶¶ 34 - 36 (DEX 1); *Notice* (Dkt. No. 52).

The Court granted USACIDC's motion on June 16, 2010.  *Order* (Dkt. No. 26).  Including the Court's grant of USACIDC's first motion to stay the proceedings, the Court has granted five motions to stay the proceedings to permit USACIDC to produce, on a rolling release basis, the more than 41,000 pages of responsive documents, subject to redactions made pursuant to certain FOIA exemptions.  *Orders* (Dkt. Nos. 26, 40, 43, 46, 51).  On August 8, 2011, USACIDC advised the Court that it had completed production of responsive documents on August 5, 2011.[2]  *Notice* (Dkt. No. 52).  The Court then granted the parties an additional sixty days to resolve any issues concerning production of responsive documents.  *Order* (Dkt. No. 53).

Plaintiff filed its amended complaint on October 7, 2010, seeking to compel production of all of the more than 41,000 pages of responsive documents and to compel production of a *Vaughn* index that accounted for the approximately 23,763 pages of responsive documents that

---

[2]At the time it made this representation, USACIDC was unaware of any supplemental releases or corrections that were needed to its production.  Between August 5, 2011 and November 2, 2011, USACIDC identified and released pages of documents that were either inadvertently omitted from documents referred to other agencies for release determinations, that were inadvertently omitted from the releases of documents to plaintiff, or that were initially found to be shielded from release by a FOIA exemption but, upon further review, were determined not to be so protected from release.  On January 6, 2012, USACIDC filed a notice with the Court informing the Court that, in selecting the representative sample, USACIDC conducted a page-by-page review of the entire release and determined that its records could not confirm whether approximately 219 pages from the entire release were previously released to plaintiff.  *Notice* (Dkt. No. 69).  USACIDC, therefore, provided plaintiff with a copy of the pages at issue.

were either withheld in full or released with redactions. *Amended Complaint* (Dkt. No. 55).

USACIDC answered plaintiff's amended complaint on October 21, 2010, and the Court issued

an Amended Scheduling Order on November 2, 2011. *Answer* (Dkt. No. 56); *Amended*

*Scheduling Order* (Dkt. No.58). USACIDC filed its Motion to Vacate the Issuance of the

Court's Amended Scheduling Order, to set a Summary Judgment Briefing Schedule, and for

Leave to File a Representative Sampling *Vaughn* Index on November 3, 2011, which plaintiff

opposed. *Motion* (Dkt. No. 60-61); *Opposition* (Dkt. No. 64); *Reply* (Dkt. No. 65). On

November 22, 2011, the Court vacated the Amended Scheduling Order, set a summary judgment

briefing schedule, and specified that USACIDC shall provide a *Vaughn* index based upon a

representative sample of documents that were either released with redactions or withheld in full.

*Opinion* (Dkt. No. 67); *Order* (Dkt. No. 68).

## SUMMARY JUDGMENT LEGAL STANDARD

FOIA cases are properly resolved on summary judgment once documents responsive to

the FOIA request at issue have been identified. *See Hanson v. USAID*, 372 F.3d 286, 290 (4th

Cir. 2004); *Wickwire v. Gavin*, 356 F.3d 588, 590 (4th Cir. 1994). In general, summary judgment

is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). To obtain summary

judgment in this FOIA case, USACIDC must show, viewing the facts in the light most favorable

to plaintiff, that there is no genuine dispute of material fact with regard to USACIDC's

compliance with the FOIA. *See Rein v. U.S. Patent and Trademark Office*, 553 F.3d 353, 358

(4th Cir. 2009); *Wickwire*, 356 F.3d at 590; *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551

(D.C. Cir. 1994).

Thus, the only questions in this case are whether USACIDC "conducted a reasonable search, and whether its withholdings are justified." *Hornbostel v. U.S. Dep't. of Interior*, 305 F.Supp. 2d 21, 28 (D.D.C. 2003) (quoting *Landmark Legal Found. v. E.P.A.*, 272 F.Supp. 2d 59, 62-63 (D.D.C. 2003)).  To answer these questions, USACIDC may submit affidavits or declarations demonstrating the reasonableness of its search and justifying the withholdings.  <u>See</u> <u>Rein</u>, 552 F.3d at 365 (relying on agency declarations to detrmine reasonableness of the search and propriety of the withholdings); *Freeman v. U.S. Dep't of Justice*, 1986 WL 18310, * 2 (4th Cir. 1986).  Agency declarations, such as the declaration USACIDC has submitted in this case, are to be accorded a presumption of good faith.  *See, e.g., Bowers v. U.S. Dep't. of Justice*, 930 F.2d 350, 357 (4th Cir. 1991).  This Court, therefore, may award summary judgment based solely upon the information in the declarations or affidavits when they not only show that a reasonable search was conducted, but describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

<u>**ARGUMENT**</u>

**I.  <u>USACIDC CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE DOCUMENTS</u>.**

USACIDC's search for responsive documents was fully adequate under the FOIA.[3] When judging whether USACIDC's search for documents was adequate, "the relevant question

---

[3]It should be noted that, in both its Complaint and Amended Complaint, plaintiff has not disputed the adequacy of USACIDC's search. Out of an abundance of caution, however, USACIDC has described and justified its search.

is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1246 (4th Cir, 1994) (internal citations and quotation marks omitted); *see also Oglesby v. U.S. Dep't. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Thus, USACIDC's search need not have been exhaustive. Rather, it need only have been reasonable. *See Rein*, 553 F.3d at 363 n. 14, 364; *Meerpol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."); Ray v. F.B.I., 441 F. Supp. 27, 32 (D.D.C. 2006) ("Perfections is not required. An agency's search is not presumed unreasonable because it fails to find all relevant material."). USACIDC can demonstrate the adequacy of its search by relying on affidavits that are "'relatively detailed, nonconclusory and not impugned by evidence in the record of bad faith on the part of the agency.'" *Summers v. U.S. Dep't. of Justice*, 934 F.Supp. 458, 460 (D.D.C. 1996) (quoting *McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).

As described in Ms. Kardelis' declaration, her office conducted a reasonable search in response to plaintiff's FOIA request. Ms. Kardelis' detailed and nonconclusory declaration shows that the search was conducted in a manner designed to identify all responsive documents. Specifically, on September 11, 2007, her office searched four databases – ACI2, which contains information on all USACIDC cases from 1987 to the present; COPS, which is an Army-wide database with, in pertinent part, information on military police reports from 2004 to present; DCII, which is a Department of Defense-wide database that contains Army crime information from 1959 to present; and ASCRC, which contains limited data on all Army Criminal

11

Investigation Division ROIs and military police reports from 1971 to the present.  As a result of the searches of these Army-wide and Department of Defense-wide databases, Ms. Kardelis' office identified two files that contained responsive documents – the 2005 investigation in Maryland and the 2006 investigation in Massachusetts.  USACIDC, however, denied plaintiff's FOIA request because the investigations were open and active.[4]

After plaintiff renewed its FOIA request, Ms. Kardelis' office checked the status of the 2005 and 2006 investigations and learned that the 2006 investigation, which incorporated the 2005 investigation, remained open.  USACIDC, therefore, denied plaintiff's second FOIA request, which plaintiff appealed and Army OGC later affirmed.  On March 19, 2010, Ms. Kardelis' office again checked the status of the investigations and learned that the 2006 investigation remained open.  After conferring with the Boston Fraud Resident Agency, however, it was confirmed that the investigation was in the process of being closed.  After the 2006 investigation was closed on April 15, 2010, Ms. Kardelis' office contacted the Boston and Maryland Fraud Resident Agencies and asked that the offices forward their hard copy files to her office.

## II.  USACIDC PROPERLY APPLIED THE FOIA EXEMPTIONS.

To withhold information responsive to a FOIA request, an agency must show that the withheld material falls within at least one of the FOIA's statutory exemptions.  *See Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1984).  To make such a showing, USACIDC may submit affidavits, declarations, or a *Vaughn* index describing the withheld

---

[4]Plaintiff never appealed USACIDC's denial of plaintiff's first FOIA request.  Plaintiff, therefore, has never exhausted its remedies as to its first FOIA request.

documents and the statutory basis for the withholdings, which provide sufficient information to permit this Court to determine whether the withheld documents fall within the claimed exemptions. *See Ethyl Corp.*, 705 F.2d at 1250; *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Ms. Kardelis' declaration and USACIDC's *Vaughn* index amply establish that USACIDC properly asserted FOIA exemptions 4, 5, 6, 7(c), 7(d), 7(e), and 7(f).

**A.   <u>Information was properly withheld under FOIA exemption 3</u>.**

Pursuant to 5 U.S.C. § 552(b)(3) and 10 U.S.C. § 2305(g), the Office of the Secretary of Defense, through USACIDC, withheld in full or in part contract proposals or portions of contract proposals that were submitted to federal agencies by companies other than UCI.  For example, Bates stamped pages 2676 to 2708 and 5284 to 5285 are documents that were part of proposals submitted by GeoCenters, Inc. and Three Springs Scientific, Inc., respectively, to a Government organization.  Hogan Dec. at ¶ 6 and attached Vaughn (DEX 4).  The documents contain information on costs and, in the case of the GeoCenters, Inc. documents, proposed research plans.  Because documents withheld pursuant to FOIA exemption 3 were submitted with contract proposals, 10 U.S.C. § 2305(g) precludes their release.

**B.   <u>Information was properly withheld under FOIA exemption 4</u>.**

Pursuant to 5 U.S.C. § 552(b)(4), USACIDC may withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  "Information other than trade secrets falls within the second prong of the exemption if it is shown to be (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizens Health Research Group v. F.D.A.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974)).  USACIDC

properly withheld certain documents submitted by companies as specified in the *Vaughn* index under this prong because these documents satisfy each of these three criteria.  *Kardelis Dec.* at Attachment J (DEX 1).

### 1.  Commercial or Financial

In the context of FOIA exemption 4, the terms "commercial" and "financial" are "given their ordinary meanings."  *Pub. Citizen Health*, 704 F.2d at 1290.  Records need not "reveal basic commercial operations" to be considered commercial; rather, the submitter need only have a "commercial interest" in them.  *Id.*; *see Baker & Hostetler LLP v. U.S. Dep't. of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006).  In this case, private companies – for example, CellPhire, Beetech, and Batelle – submitted documents that are "commercial" within its ordinary meaning. The companies that submitted the documents had a financial interest in the documents, as the documents contained each company's information concerning proposed research plans and prices for labor, researchers, and materials.  Thus, each company had a financial and commercial interest in the proposals and pricing plans that they submitted.

### 2.  Obtained from a Person

For purposes of FOIA exemption 4, "person" includes corporations.  *See Fed. Communications Comm'n v. AT&T, Inc.*, 131 S. Ct. 1177, 1185 (2011) ("Exemption 4 . . . clearly applies to corporations - it uses the term 'person' to describe the source of the information . . . .").  Each company, therefore, that submitted a research plan, price quote, or other commercial information, is considered a person under FOIA exemption 4.

### 3.  Privileged or Confidential

The only remaining question under FOIA exemption 4, therefore, is whether the

documents that each company submitted to the federal government are "privileged or

confidential."  The documents that the companies submitted are confidential.  The appropriate

test for confidentiality is less stringent if the submission was voluntary than if the submission

was required.  S*ee Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144,

148 (D.C. Cir. 2001) ("When the Government obtains information as part of a mandatory

submission, the Government's access to the information normally is not seriously threatened by

disclosure; the private interest is the principal factor tending against disclosure, and the harm to

the private interest must be significant to prevent public access to information. [ ] However,

when the Government receives information voluntarily, it has a strong interest in ensuring

continued access, and therefore both the Government and private interests weigh heavily against

overly broad disclosure."); *Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71, 78 (D. D.C.

2001).  A submission to a government agency is voluntary unless the agency has the authority to

compel the submission, *see Ctr. for Auto Safety*, 244 F.3d at 149, *and* the agency actually

exercises that authority, *see Parker*, 141 F. Supp. 2d at 78.  Applying this standard, the

companies' submissions, as outlined in the accompanying *Vaughn* index, were voluntary.  For

example, documents that Total Immersion Software, Inc. and Munchi BioTherapeutics Corp.,

*Kardelis Dec*. at Attachment J, Bates stamped pages 24602-24613 and 28285-28321,

respectively (DEX 1), submitted to the Government as part of their contract proposals were

withheld in full by USACIDC pursuant to FOIA exemption 4.  The government had no authority

to compel the production of these contract proposals and cost estimates for materials, let alone

did any government agency exercise any such authority through a subpoena or other means.  If

the companies wished to perform contract services for or provide materials to the government,

then the individual companies could and did submit proposals to the government.

"[W]hen the Government receives information voluntarily, it has a strong interest in ensuring continued access, and therefore both the Government and private interests weigh against overly broad disclosure." *Ctr. for Auto Safety*, 244 F.3d at 148 (citing *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992)).  Accordingly, "financial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 879.  The companies that submitted the contract proposals and pricing information would not release these documents to the public because they are comprised of the companies' business and financial information, which include pricing strategies and research methods the companies have developed.  The documents that the companies submitted to the government, therefore, meet all the requirements for FOIA exemption b(4) to apply.

### C. **Information was properly withheld under FOIA exemption 5**.

Pursuant to 5 U.S.C. § 552(b)(5), USACIDC may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  This exemption incorporates the discovery privileges recognized in civil litigation, without regard to the needs of a particular plaintiff.  *See Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001); *N.L.R.B v. Sears Roebuck & Co.*, 421 U.S. 132, 149, (1975).  Thus, "only documents 'normally' or 'routinely' disclosable in civil discovery fall outside the protection of the exemption." *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  USACIDC properly withheld

portions of the documents pursuant to FOIA exemption 5, as specified in the *Vaughn* indices and

declarations accompanying this motion.

### 1. Deliberative Process Privilege

Some of the information over which USACIDC has asserted FOIA exemption 5 is

material protected by the "deliberative process privilege." *See Russell v. Dep't of the Air Force*,

682 F.2d 1045, 1047 (D.C. Cir. 1982). The deliberative process privilege "protects not only

communications which are themselves deliberative in nature, but all communications which, if

revealed, would expose to public view the deliberative process of an agency." *Id*. at 1048. In

protecting such information, the privilege achieves at least three objectives:

> First, it protects creative debate and candid considerations of alternatives
> within an agency, and, thereby, improves the quality of agency policy
> decisions. Second, it protects the public from the confusion that would result
> from premature exposure to discussions occurring before the policies
> affecting it had been settled upon. And third, it protects the integrity of the
> decision-making process itself by confirming that officials should be judged
> by what they decided[,] not for matters they considered before making up
> their minds.

*Id*. (internal quotation marks omitted); see also *City of Va. Beach*, 995 F.2d at 1252-53

(identifying the same rationales). The exemption, thus, "guard[s] against disclosure of

documents that suggest 'as agency position that which is as yet only personal position.'" *Russell*,

682 F. 2d 1048 (quoting *Coastal Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir.

1980)).

To invoke the deliberative process, USACIDC "must show that, in the context in which

the materials are used, the documents are both *predecisional* and *deliberative*." *City of Va.*

*Beach*, 995 F. 2d at 1252 (internal quotation marks omitted) (emphasis added). USACIDC need

not, however, identify a specific decision with respect to each documents for which the privilege

17

is claimed. Rather, USACIDC, as with other federal agencies and organizations, is, "and properly should be, engaged in a continuing process of examining [its] policies." *Id.* (quoting *Sears Roebuck & Co.*, 421 U.S. at 251-52 n. 18). Deliberative documents are those that "'reflect[] the give-and-take of the consultative process' by revealing the manner in which the agency evaluates possible policies or outcomes." *Id.* (quoting *Coastal States Gas Corp.*, 617 F.2d at 866). Thus, "[t]he critical factor in determining whether the material is deliberative in nature is whether disclosure of the information would discourage candid discussion within the agency." *Elec. Privacy Inf. Ctr. v. U.S. Dep't of Interior*, 384 F. Supp. 2d 100, 111-12 (D.D.C. 2005) (internal quotation marks omitted).

In sum, the deliberative process privilege routinely protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *City of Va. Beach*, 995 F.2d at 1252. When evaluating a claim of deliberative process privilege, courts give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining what confidentiality is needed to prevent injury to the quality of agency decisions." *Pfeiffer v. Central Intelligence Agency*, 721 F. Supp. 337, 340 (D.D.C. 1989) (internal quotations omitted).

The Soldier Systems Center in Natick, Massachusetts, through USACIDC, has asserted the deliberative process privilege over a number of pre-decisional documents that contain recommendations or expressions of opinions on legal or policy matters. *Bailey Dec.* at ¶¶ 6-8 (DEX 3); *Kardelis Dec.* at ¶ 42 (DEX 1); *Bishop Dec.* at ¶¶ 5-7 (DEX 5). Some of these documents relate to the contracting mechanisms available to a command and recommendations as to which contracting mechanism best suits the command's needs. *Bailey Dec.* at ¶¶ 6-8 (DEX

3). All of the documents over which FOIA exemption 5 is asserted originated within the government and were only shared with government personnel. These documents, therefore, fall squarely within the deliberative process privilege.

### 2. Attorney-Client Privilege

The attorney-client privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 375 (4th Cir. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The attorney-client relationship contemplates agencies as clients and their lawyers as their attorneys. *Id*. at 376. The privilege extends both to confidential information divulged by the client to the attorney and to opinions given by the attorney to the client in order to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. at 375. Communications between clients and attorneys are subject to the privilege so long as they were created pursuant to express or implied grants of confidentiality." *Id*. at 376 (citing *Maine v. Dep't of the Interior*, 298 F.3d 60, 71-71 (1st Cir. 2002)).

As shown in the *Vaughn* index, USACIDC has asserted attorney-client privilege over confidential communications Army and DoD personnel had with government lawyers. *Kardelis Dec*. at ¶ 43 (DEX 1); *Bailey Dec*. at ¶¶ 6-8 (DEX 3). The confidentiality of these communications was either expressly stated or implied from the subject matter of the communications, which included discussions about the best contracting vehicles and about the potential criminal prosecution of Mr. Hopmeier for fraud. Thus, the attorney-client privilege bars

the release of some of the information USACIDC withheld pursuant to FOIA exemption 5.

### D.  **Information was properly withheld under FOIA exemptions 6 and 7(c)**.

The bulk of the redactions to the entire release consisted of redactions of personal information pursuant to FOIA exemption 6 and 7(c).[5]  Exemption 6 requires agencies to withhold information contained in "personnel," "medical," and "similar" files when disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Similarly, FOIA exemption 7(c), shields from release "records or information compiled for law enforcement purposes . . . that could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(7)(c).  As to FOIA exemption 7(c), all of the responsive documents are part of the files that USACIDC generated for purposes of its criminal investigation of Mr. Hopmeier and UCI.  The documents, therefore, were compiled for law enforcement purposes.  USACIDC's *Vaughn* indices show that names of individuals – other than Mr. Hopmeier – and their personal contact information has been withheld pursuant to both FOIA exemptions 6 and 7(c).  *Kardelis Dec*. at ¶¶ 44-46 (DEX 1); *Bailey Dec*. at ¶ 9 (DEX 3); *Hogan Dec*. (DEX 4). Thus, the information was properly withheld pursuant to these exemptions.  *See Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 456 (D.C. Cir. 2007) (citing *U.S. Dep't of Justice*

---

[5]Plaintiff has previously stated that it would waive objections to and indexing of personal information withheld pursuant to FOIA exemptions 6 and 7(c). Dkt. No. 64 at 12-13.  It should also be noted that USACIDC processed and reviewed the responsive documents that originated wihin USACIDC before the U.S. Supreme Court's decision in *FCC v. AT&T, Inc*., 131 S. Ct. 1177 (2011), which held, in pertinent part, that for purposes of FOIA exemption 7(c), a corporation is not considered a person.  USACIDC withheld in full some companies' information pursuant to FOIA exemptions 6 and 7(c).  USCIDC is in the process of reviewing the responsive documents to ensure that all corporate documents withheld pursuant to FOIA exemptions 6 and 7(c) are released, subject to other FOIA exemptions.

*v. Reporters Comm'n for Freedom of Press*, 489 U.S. 749, 762 (1989)); *Nation Magazine v. U.S.*

*Customs Serv.*, 71 F. 3d 885, 894 (D.C. Cir. 1995) ("'[T]hird parties who may be mentioned in

investigatory files' and 'witnesses and informants who provide information during the course of

an investigation' have an 'obvious' and 'substantial' privacy interest in their information."); *see*

*also Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 41 (D.C. Cir. 2011); *Multi AG*

*Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).

### E.  Information was properly withheld pursuant to FOIA exemption 7(d).

USACIDC withheld in full approximately 204 pages of registered source documents

pursuant to FOIA exemption 7(d), which "protects from disclosure those records or information

compiled for law enforcement purposes that could reasonably be expected to disclose the identity

of a confidential source, including a State, local, or foreign agency or authority or any private

institution which furnished information on a confidential basis, and, in the case of a record or

information compiled by a criminal law enforcement authority in the course of a criminal

investigation . . . information furnished by a confidential source." *Billington v. U.S. Dep't of*

*Justice*, 301 F.Supp. 2d 15, 21 (D.D.C. 2001) (quoting 5 U.S.C. § 552(b)(7)(d)); *Kardelis Dec*. at

¶¶ 47-49 (DEX 1).  To invoke FOIA exemption 7(d), USACIDC must show that the source

provided the information under an express guarantee "of confidentiality or that the circumstances

support an inference of confidentiality." *Id*.  The two registered sources provided the information

on condition of confidentiality and could face retaliation for their cooperation with the

investigation.  *Id*. at ¶ 49.  There was, therefore, a guarantee of confidentiality, and USACIDC

properly withheld the registered source information from release.

### F.  Information was properly withheld pursuant to FOIA exemptions 7(e) and 7(f).

FOIA exemption 7(e) shields from release "law enforcement records to the extent that their production 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (quoting 5 U.S.C. § 552(b)(7)(e)). Similarly, FOIA exemption 7(f) excludes from release law enforcement information that "could reasonably be expected to endanger the life or physical safety of an individual." 5 U.S.C. § 552(b)(7)(f).

The information withheld pursuant to FOIA exemptions 7(e) and 7(f) describes techniques such as plans for executing a search warrant, that, if revealed, could lead to concealment or destruction of evidence, or could threaten the safety of agents and occupants of a property being searched. *Kardelis Dec.* at ¶ 50 (DEX 1). Additionally, release of the names of special agents could endanger their safety. *See Blanton v. U.S. Dep't of Justice*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002) (acknowledging that disclosure of FBI special agents' names could endanger their safety). USACIDC, therefore, also withheld special agents' names pursuant to FOIA exemption 7(f), as well as FOIA exemptions 6 and 7(c).

## III.  USACIDC RELEASED ALL REASONABLY SEGREGABLE PORTIONS OF EXEMPT DOCUMENTS.

After an agency has identified all documents that contain exempt material, it must determine whether any information in the documents is reasonably segregable and can be released. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt."); *see also City of Va. Beach*, 995 F.2d at 1253; *Mead Data Ctr., Inc. v U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir.

1977).  An agency must, for example, segregate and release "purely factual information" contained within an otherwise exempt document unless that information "is 'inextricably intertwined with [the] policymaking processes' such that revelation of the factual material would simultaneously expose protected deliberation."  *City of Va. Beach*, 995 F.2d at 1253 (quoting *Envt'l Prot. Agency v. Mink*, 410 U.S. 73, 92 (1973)).

To demonstrate that all reasonably segregable material has been released, USACIDC must show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996) (citations omitted).  USACIDC is not required, however, to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261 n. 55.  Each page of each document was evaluated for segregability to determine whether it was responsive to the FOIA request and non-exempt.  *Kardelis Dec*. at ¶¶ 51-53 (DEX 1).  USACIDC released all segregable portions of documents and, thus, has complied with FOIA's mandate.

To the extent that USACIDC did not release factual information in the responsive documents, the information was found to be "inextricably intertwined" with the basis for withholding for at least one of three reasons.  *Mink*, 410 U.S. at 92.  First, in some instances, rather than presenting facts in a neutral or objective fashion, the author presented the factual information in a manner that inherently suggested the author's subjective assessment of the factual information.  *Kardelis Dec*. at ¶ 52 (DEX 1)*; Bailey Dec*. at ¶¶ 6-7 (DEX 3).  In this case, the factual information was inextricably intertwined with the basis for withholding and, thus, not segregable.  *See, e.g. Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 39 (5th Cir. 1982) (upholding

23

redactions of assertions of fact, where those facts were presented in accordance with "the writer's own values"); *Williams v. U.S. Dep't of Justice*, 556 F. Supp. 63 (D.D.C. 1982) (holding that factual material was not segregable where it was "selective and presented often with characterization or passing comment"). Second, in other instances, the exempt documents contained factual information that was distilled from a larger set of facts. *Kardelis Dec.* at ¶ 52 (DEX 1). Disclosure of such information would reveal the author's choices as to what facts were important or significant, thereby betraying the agency's deliberative process. *See Mapother v. U.S. Dep't of Justice*, 3 F. 3d 1533, 1538-39 (D.C. Cir. 1993) (where the selection of facts involves the formulation or exercise of policy-related judgment, disclosure of "factual summaries written to assist the making of a discretionary decision" is inappropriate); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health*, 610 F.2d 70 (2d Cir. 1979) ("Disclosing factual segments from the DBA and CPA summaries would reveal the deliberative process of summarization itself by demonstrating which facts in the massive rule-making record were considered significant by the decisionmaker and those assisting her."); *Tarullo v. U.S. Dep't of Defense*, 170 F. Supp. 2d 271, 278 (D. Conn. 2001) ("[T]he very selection of facts could also reveal the nature of those recommendations and opinions.").[6]

Third, the release of factual information contained within draft documents would reveal the process by which the agency developed the final document – a process that is itself protected by the deliberative process privilege. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988) ("To the extent that [the requester] seeks through its FOIA request to

---

[6]Moreover, with respect to the registered source/confidential source documents, disclosure of such information would likely reveal the identity of a confidential source.

24

uncover any discrepancies between the findings, projections, and recommendations between the draft[s] prepared by lower-level [agency] personnel and those actually adopted, . . . it is attempting to probe the editorial and policy judgments of the decisionmakers."); *Marzen v. U.S. Dep't of Health and Human Services*, 825 F.2d 1148, 1155 (7th Cir. 1987) ("[E]xemption protects not only the opinions, comments and recommendations in the draft, but also the process itself."); *Dudman Comms. Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1568-69 (D.C. Cir. 1987) (protecting factual material in early drafts of an official history on grounds that disclosure would unduly reveal editorial judgments); *Kardelis Dec*. at ¶ 52 (DEX 1).  USACIDC, therefore, has released all segregable information and has provided specific reasons for why information is not segregable.

## CONCLUSION

For the aforementioned reasons, USACIDC respectfully requests that this Court grant USACIDC's motion for summary judgment.

Respectfully submitted,

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

By: _____/s/_____
DEIRDRE G. BROU
Special Assistant U.S. Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3845
Fax: (703) 299-3983
Email: deirdre.brou@usdoj.gov

Date: February 21, 2012                     ATTORNEY FOR DEFENDANT

25

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 21st day of February, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to the following:

> Matthew J. Smith
> Remenick PLLC
> 1025 Thomas Jefferson Street, N.W., Suite 175
> Washington D.C. 20007
> Tel: (202) 570-7380
> Fax: (888) 570-7381
> msmith@remenicklaw.com

> _____/s/_____
> DEIRDRE G. BROU
> Special Assistant U.S. Attorney
> Office of the United States Attorney
> Justin W. Williams U.S. Attorney's Building
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> Telephone: (703) 299-3845
> Fax: (703) 299-3983
> Email:  deirdre.brou@usdoj.gov

> ATTORNEY FOR DEFENDANT