IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
WILLIAMS MULLEN,                )
                                )
       Plaintiff,               )
                                )
          v.                    )    1:10cv262 (JCC/TCB)
                                )
UNITED STATES ARMY CRIMINAL     )
INVESTIGATION COMMAND,          )
                                )
       Defendant.               )
```

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant United States Army Criminal Investigation Command's Motion for Summary Judgment and on Plaintiff Williams Mullen's Motion for Attorneys' Fees.  For the following reasons, the Court will grant the Motion for Summary Judgment and deny the Motion for Attorneys' Fees.

## I.  Background

### A.  Factual Background

The case arises out of an alleged illegal withholding of certain records by the United States Army Criminal Investigation Command (USACIDC).  Plaintiff filed its original FOIA request on July 31, 2007.  (Compl. ¶ 5; Ex. 1.)  USACIDC denied that request on October 16, 2007, citing an active

investigation regarding Michael Hopmeier and Unconventional Concepts, Inc. (UCI). (Compl. ¶ 8; Ex. 3.) On July 7, 2009, Mr. Hopmeier received a letter from the DOJ stating that it had completed its investigation of Mr. Hopmeier and UCI. (Compl. ¶ 9; Ex. 4.) As a result, Plaintiff resubmitted its FOIA request on August 31, 2009. (Compl. ¶ 10; Ex. 5.) USACIDC denied it on September 29, 2009, again citing an active investigation. (Compl. ¶ 11; Ex. 6.)

Plaintiff appealed to the Army Office of General Counsel (Army OGC), but the Army OGC affirmed the decision on January 8, 2010, again citing FOIA Exemption 7(A) and an active law enforcement proceeding. (Compl. ¶¶ 12, 14; Ex. 8.) The Army OGC explained that there was an ongoing, joint investigation with several law enforcement agencies. (*Id.*) The Army OGC stated, "USACIDC determined that the responsive records should be withheld in their entirety under Exemptions 2, 6, 7(A) and 7(C) . . . While Exemptions 2, 6, and 7(C) may support withholding portions of the document, Exemption 7(A) supports withholding the entire document, but is limited temporally." (*Id.*) It noted, "[a]lthough this record cannot be released to you presently, you may make another request for it when the law enforcement proceedings have closed." (*Id.*) Plaintiff requested by letter that the Army OGC reconsider on January 26, 2010, but received no response. (Compl. ¶ 15; Ex. 9.)

On March 17, 2010, Plaintiff filed a Complaint against USACIDC for alleged FOIA violations.  (Compl. ¶¶ 16-17); [Dkt. 1].)  On May 4, 2010, the Court issued a scheduling order directing the parties to finish discovery by September 10, 2010.  [Dkt. 10.]  On May 14, 2010, Defendant moved to vacate the scheduling order and to stay the proceedings for ninety days to allow it time to review and release documents previously withheld due to the investigation.  [Dkts. 11-12.]  Defendant submitted that USACIDC closed its investigation on April 15, 2010, and so it could produce documents previously withheld under Exemption 7(A).  As a result, Defendant submitted that "the action will essentially be moot once the release is complete."  (*Id.*)

Those documents fell into three categories: documents from a 2005 investigation, the 2006 report of investigation (the "2005 and 2006 Materials"), and approximately 37,000 pages of field files from the investigation (the "Field Files").  (Mot. Stay [Dkt. 12] at 3.)  Defendant provided a cost estimate for production of these files and twice asked for confirmation that Plaintiff would pay the cost.  (*Id.*)  Plaintiff initially refused but later agreed to pay for production of the 2005 and 2006 Materials.  (Mot. Stay at 4.)

Per Defendant's request, the Court issued an Order on June 14, 2010, staying proceedings until September 12, 2010.

[Dkt. 27.]  Defendant then produced redacted copies of both sets of documents on June 11, 2010, and June 25, 2010, respectively, but, at Plaintiff's request did not produce the Field Files. (Mot. Stay at 5.)  On July 28, Plaintiff requested production of the Field Files.  (Mot. Stay at 5.)  The Court then granted several enlargements of the stay period to allow USACIDC to continue processing and releasing the responsive documents. [Dkts. 40, 43, 46, 51, 54.]  The last order granting a stay was on August 8, 2011, and it extended the time for production an additional sixty days––until October 7, 2011.  [Dkt. 54.]  The Court further ordered Plaintiff to file an amended complaint should any issues remained unresolved by that date.  (*Id.*)

On August 8, 2011, USACIDC advised the Court that it had completed production of responsive documents on August 5, 2011.  [Dkt. 52.]  Yet, Plaintiff received another set of documents on October 4, 2011 [Am. Compl. ¶ 16], and on November 3, 2011, it received approximately 181 additional pages (Opp. to Mot. Vacate [Dkt. 64] at 5).  At that point in time, Defendant released more than 41,000 pages of responsive documents, approximately 23,763 of which were redacted or withheld in full (the "2011 Release").

Believing that production was completed on August 5, 2011, on August 10, 2011, Plaintiff requested via email correspondence that USACIDC provide a *Vaughn* Index.  [Dkt. 55,

Ex. B.]  The Government responded that it would produce a *Vaughn*

Index with a summary judgment briefing scheduling order.  [Dkt.

55, Ex. C.]  Plaintiff replied that it sought to avoid

compelling the production of the index through a Court hearing,

and that only after reviewing the index could it determine to

voluntarily dismiss the case or file an amended complaint

objecting to the Government's withholdings.  [Dkt. 55, Ex. D.]

The parties continued to exchange communication about the *Vaughn*

Index, but were unable to come to an agreement regarding its

production.  [Dkt. 55, Exs. D-F.]

     As a result of their inability to come to an agreement

on a *Vaughn* Index, and the continued production of documents,

Plaintiff filed an Amended Complaint on October 7, 2011.  [Dkt.

55.]  The Amended Complaint, in part, requested the Court to

compel Defendant's production of a full *Vaughn* index.  (*Id.*)  On

November 3, 2011, Defendant also filed a Motion to set a Summary

Judgment Briefing Schedule [Dkt. 63] and a Motion for Leave to

File a Representative Sampling [Dkt. 60].

     On November 22, 2011, this Court ordered USACIDC to

provide a *Vaughn* Index based on a representative sample of

documents that were either released with redactions or withheld

in full.  [Dkt. 68.]  Pursuant to this Court's orders, Defendant

completed its production and submitted a *Vaughn* index.  As a

result, on February 21, 2012, Defendant filed a Motion for

Summary Judgment.  [Dkt. 70.]  On April 27, 2012, Defendant

filed a Praecipe, notifying the Court that it had released

additional documents that were responsive to the request (the

"2012 Release").  [Dkt. 74.]  USACIDC submits that during its

preparation of the *Vaughn* Index, it identified documents, or

parts of documents, that should not have been withheld.

(Praecipe [Dkt. 74] ¶ 1.)  USACIDC states, that in reliance on

the Supreme Court's decision in *FCC v. AT&T*, 131 S. Ct. 1177

(2011), which affected the definition of a corporation in FOIA

Exemption 7(C), it reviewed all responsive documents and

identified documents withheld pursuant to FOIA Exemptions 6 and

7(C).  (Praecipe ¶ 3; Decl. Kardelis [Dkt. 74-2] ("Decl.

Kardelis B") ¶ 7.)  Those documents were reviewed to identify

company documents that were withheld pursuant to FOIA Exemptions

6 and 7(C).  (*Id.*)  And, during this review, USACIDC also

identified some documents that pertained to Mr. Hopmeier that

were withheld in full pursuant to FOIA exemptions 6 and 7(C).

(*Id.*)  (Mr. Hopmeier had previously submitted a waiver to the

indexing of personal information.)  As a result of that review,

USACIDC identified approximately 906 pages of documents that

were withheld in full or in part pursuant to FOIA exemptions 6

and 7(C) that could be released.  (Praecipe ¶ 4; Decl. Kardelis

B ¶ 9.)  USACIDC also identified a handful of other documents

that could be released in part or in full.  (Praecipe ¶¶ 5-6.)

USACIDC provided a second *Vaughn* Index for all documents in this supplemental release.  (Praecipe ¶ 4.)

> B.   Procedural Background

On March 17, 2010, Plaintiff filed its Complaint [Dkt. 1], which was amended on October 7, 2011 [Dkt. 55].  On February 21, 2012, Defendant filed a Motion for Summary Judgment.  [Dkt. 70.]  On May 21, 2012, Plaintiff filed an Opposition to the Motion for Summary Judgment.  [Dkt. 75.] Also, on May 21, 2012, Plaintiff filed a Motion for Attorneys' Fees [Dkt. 76], requesting attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).  On June 4, 2012, Defendant filed Opposition to the Motion for Attorneys' Fees.[1]  [Dkt. 81.]  On June 7, 2012, Plaintiff filed a Rebuttal to the opposition. [Dkt. 82.]

On June 12, 2012, Plaintiff filed a Notice of Objection, claiming that Defendant, in its Opposition to the Motion for Attorneys' Fees, disclosed confidential information from a settlement negotiation.  [Dkt. 84.]  Plaintiff requests that such information be excluded from the record.  On June 15, 2012, Defendant filed a Response to the Notice of Objection. [Dkt. 85.]  On June 18, 2012, Plaintiff filed a Notice of Clarification in response to that Notice of Objection.  [Dkt. 86.]

---

[1] On June 11, 2012, Defendant filed a Notice withdrawing an argument made in this opposition.  [Dkt. 83.]

Defendant's Motion for Summary Judgment and Plaintiff's Motion for Attorneys' Fees are now before the Court.

## II.   Standard of Review

A.   <u>Summary Judgment</u>

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

B. <u>Attorneys' Fees under FOIA</u>

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). FOIA now states that a complainant "has substantially prevailed if the complainant has obtained relief through either--(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.*

"If a determination is made that [complainant] has substantially prevailed, the court must then evaluate four factors to decide whether he is entitled to an award." *Reinbold v. Evers*, 187 F.3d 348, 362 (4th Cir. 1999). "The four factors the court would look to are: '(1) the benefit to the public, if any, derived from the case; (2) the benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law.'" *Id.* at n.16 (quoting *Gowan v. U.S. Dep't of the Air Force*, 148 F.3d 1182, 1195 (10th Cir. 1998)) (internal quotations omitted).

Attorneys' fees award decisions are within the discretion of the district court and are reviewed for abuse of discretion. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998).

### III. Analysis

A. <u>Summary Judgment</u>

FOIA cases are properly resolved on summary judgment once documents responsive to the FOIA request at issue have been identified. *See Hanson v. USAID*, 372 F.3d 286, 290 (4th Cir. 2004); *Wickwire v. Gavin*, 356 F.3d 588, 590 (4th Cir. 1994). To obtain summary judgment in this FOIA case, USACIDC must show, viewing the facts in the light most favorable to Plaintiff, that there is no genuine dispute of material fact with regard to

USACIDC's compliance with FOIA.  *See Rein v. U.S. Patent and Trademark Office*, 553 F.3d 353, 358 (4th Cir. 2009).  Thus, there are two basic inquiries in evaluating a FOIA request: the adequacy of the search and the appropriateness of any withholdings.  The Court will address each in turn.

      i.   <u>The Search</u>

The adequacy of USACIDC's search for responsive documents is evaluated under a reasonableness standard.  *See Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents."  *Rein*, 553 F.3d 362-63 (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246-47 (4th Cir. 1994)).  And, "[i]n demonstrating the adequacy of its search, [an agency may rely on an] affidavit [that is] reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search."  *Id.*

Here Defendant submits the affidavit of Michelle Kardelis, the Chief of the Freedom of Information Act and

Privacy Act Division at USACIDC.  (Decl. Kardelis [Dkt. 71-1]
("Decl. Kardelis A".)  Ms. Kardelis provided detail on the
databases searched, including the Crime Records Center, Army
Criminal Investigation and Criminal Intelligence System, the
Centralized Operations Police Suite, the Defense Central Index
of Investigations, and the Automated System Crime Record Center.
(Decl. Kardelis A ¶¶ 12, 13, 20.)  Ms. Kardelis also provided
detail on the search terms used in the search, noting that the
search keywords were: Michael Hopmeier, Mr. Hopmeier's social
security numbers, and Unconventional Concepts, Inc.  (Decl.
Kardelis A ¶ 20.)  And, Ms. Kardelis provided detail on the
sources of the documents released.  (Decl. Kardelis A ¶¶ 34-37.)

Plaintiff argues that Defendant only gave general
statements regarding its search procedure during a typical
response and "[n]ot once does Defendant set forth its search
terms or detail the type of search it performed for Plaintiff's
specific FOIA request . . . ."  (Opp. Summ. J. [Dkt. 75] at 5.)
As evidenced above, Plaintiff is simply wrong.  Ms. Kardelis
detailed the searches for this particular FOIA request and
included specific search terms.  And Plaintiff's argument that
Defendant does not provide a rationale for the search falls
flat.  The rationale is provided in the general statements in
Ms. Kardelis' Declaration describing the Army's FOIA program and
USACIDC's FOIA procedures.  Finally, Plaintiff takes issue with

the fact that the affidavit provided for the April 2012 Release does not describe the initial search.  But that is because the 2012 Release was the result of a second review of the documents in the original search.  Defendant does not submit that it conducted a second *search.*  It simply reviewed a sub-set of the existing universe of documents a second time, namely documents withheld under Exemptions 6 and 7(C).

The relevant question is "whether the agency has 'demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Ethyl Corp.*, 25 F.3d at 1246 (internal quotation and citation omitted).  Here it has.  Defendant's first search in 2007 of the four databases revealed that there were two active investigations--the 2005 investigation that originated in Maryland and the 2006 investigation that originated in Boston.  (Decl. Kardelis A ¶ 20.)  Those were the records received for FOIA processing.  (Decl. Kardelis A ¶ 32.)  And those were the records that were released to Plaintiff.  (Decl. Kardelis A ¶¶ 34-37.)  The two subsequent searches of just one database in 2009 and 2010 simply confirmed that there was an ongoing investigation and so production was prohibited at that time.  (Decl. Kardelis A ¶¶ 25, 31.)  The Court finds that that USACIDC's search was reasonable, as it was conducted in a manner designed to identify all responsive documents.

ii.     The Withholdings

To withhold information responsive to a FOIA request, an agency must show that the withheld material falls within at least one of the FOIA's statutory exemptions. *See Weisberg*, 745 F.2d at 1351. The "[e]xemptions must be narrowly construed and the burden of demonstrating that these strictly defined [e]xemptions apply to a particular case rests with the agency." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). To make such a showing, Defendant may submit affidavits, declarations, or a *Vaughn* Index describing the withheld documents and the statutory basis for the withholdings, in order to provide sufficient information to permit this Court to determine whether the withheld documents fall within the claimed exemptions. *See Ethyl Corp.*, 705 F.2d at 1250.

USACIDC provides two declarations from Ms. Kardelis, along with declarations from three other individuals, and two *Vaughn* indices. USACIDC asserted FOIA Exemptions 3, 4, 5, 6, 7(C), 7(D), 7(E), and 7(F). The bulk of the redactions to the entire release consisted of redactions of personal information pursuant to FOIA Exemption 6 and 7(C). Exemption 6 requires agencies to withhold information contained in "personnel," "medical," and "similar" files when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C), shields from release

"records or information compiled for law enforcement purposes .
. . that could reasonably be expected to constitute an
unwarranted invasion of personal privacy[.]"  5 U.S.C. §
552(b)(7)(c).

Plaintiff argues that Defendant failed to properly
invoke Exemptions 6 and 7(C).  (Opp. Summ. J. at 7-9.)
Plaintiff bases its argument on the fact that in 2012 Defendant
released additional company documents and documents specific to
Mr. Hopmeier after it reviewed documents withheld under
Exemptions 6 and 7(C) for the second time.  But this Court finds
that USACIDC's determination to correct its earlier withholdings
was nothing more than a correction.  USACIDC provides
substantial detail on its search process, its initial *Vaughn*
Index is sufficiently specific and itemized, and USACIDC
provided an additional *Vaughn* Index for all of the documents in
its second review.  The Court cannot agree with Plaintiff that
Defendant's initial withholding of documents from the 2011
production "calls into question whether Defendant has properly
invoked the other FOIA exemptions."  (Opp. Summ. J. at 7.)  The
Court notes that Plaintiff is under the erroneous impression
that Defendant's second review only encompassed documents "in
relation to a corporation's privacy interests or documents
originating from [the Small Business Administration] and [the
Office of the Secretary of Defense] that merited further

review." (Opp. Summ. J. at 9.) Ms. Kardelis' Declaration that accompanied the 2012 release explicitly states that all responsive documents were reviewed. (Decl. Kardelis B ¶ 7.)

The production here has been substantial. Defendant produced over 41,000 pages of responsive documents and consulted with approximately thirty federal agencies or organizations in order to do so. (Mem. Summ. J. [Dkt. 71] at 7). Having reviewed both *Vaughn* indices and the various affidavits, this Court is satisfied that USACIDC has properly applied the FOIA exemptions and finds that in camera inspection is not necessary in this case.

B.   Attorneys' Fees

Turning next to Plaintiff's Motion for Attorneys' Fees, as a preliminary matter, this Court finds that "[Federal Rule of Civil Procedure 408] does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case." *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) (permitting disclosure of settlement negotiations as an indicator of the measure of plaintiff's success); *see also Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011). Particularly in light of Plaintiff's claims about the extent of Defendant's cooperation in its motion--claims which necessarily rely on settlement discussions--the Court finds that Plaintiff

offers no reason why it should take notice of its Objection
[Dkt. 84] and exclude particular statements from the record.

    i.     <u>Eligibility for Award</u>

       Under FOIA, to demonstrate eligibility for an
attorneys' fees award a plaintiff can show it has obtained
relief though a judicial order. *See* 5 U.S.C. § 552(a)(4)(E).
And, after the OPEN Government Act of 2007, a plaintiff can
"become eligible for attorney fees, without winning court-
ordered relief on the merits of their FOIA claims." *See Brayton
v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir.
2011) (discussing the history of the Act); *Judicial Watch, Inc.
v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008).  The second way in
which a plaintiff can prove that it has substantially prevailed,
is to show it obtained relief though "a voluntary or unilateral
change in position by the agency, if the complainant's claim is
not insubstantial." 5 U.S.C. § 552(a)(4)(E).

       Some courts have found that the "catalyst theory," in
which the lawsuit is the catalyst to the agency's action, is
relevant to the second statutory basis for prevailing. *See
Davis v. United States DOJ*, 610 F.3d 750, 752 (D.C. Cir. 2010)
(finding Congress enacted the OPEN Government Act of 2007 to
establish that the catalyst theory applied in FOIA cases.)
Under such a theory, a plaintiff must establish that its claim
"was reasonably necessary and substantially caused the requested

records to be released." *Reinbold*, 187 F.3d at 363 (denying attorneys' fees when the delay in response was caused by a staffing shortage). In describing the theory, the Fourth Circuit has explained, that "[i]n other words," it "is a question of causation--the lawsuit must have resulted in the release of records that would not otherwise have been released." *Id.* "The mere filing of the complaint and subsequent release of the documents is insufficient to establish causation." *ACLU v. DHS*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011) (quoting *Weisberg*, 745 F.2d at 1496). "Courts must consider other factors, such as whether the agency made a good[-]faith effort to search out material and pass on whether it should be disclosed, whether the scope of request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *Id.* (quoting *Frye v. EPA*, No. 90-3041, 1992 U.S. Dist. LEXIS 14332, 1992 WL 237370, at *2 (D.D.C. Aug. 31, 1992).

Here, Plaintiff obtained relief through this Court's November 22, 2011, Memorandum Opinion and Order directing Defendant to file a representative sampling. [Dkts. 67, 68.] Plaintiff obtained both a representative sampling and, subsequently, an additional 906 pages of documents in 2012. Defendant would not provide the *Vaughn* Index without a Court order, and the additional disclosure of documents resulted from the preparation and then review of the Index. The instant

action was a direct cause of the 2012 document disclosure. *See ACLU*, 810 F. Supp. 2d at 276 (finding plaintiff eligible for attorneys' fees because without litigation particular "documents would not have been identified or evaluated to determine whether they should be released under the new guidelines"); *Hernandez v. United States Customs & Border Prot. Agency*, No. 10-4602, 2012 U.S. Dist. LEXIS 14290, at *16-19 (E.D. La. Feb. 6, 2012) (finding plaintiff eligible where disclosure was made on the Court granting the motion for partial summary judgment over defendant's objections). Because Plaintiff obtained relief through a court order, it meets the first statutory basis for substantially prevailing.

It is also likely that Plaintiff meets the second statutory option for establishing eligibility. The parties primarily argue about the catalyst theory and causation. Yet, they fail to address the statutory text of the second basis for prevailing and the fact that it is silent on the issue of causation. The text simply states that a complainant has substantially prevailed if the complainant has obtained relief through a voluntary or unilateral change in position by the agency, as long as the complainant's claim is not insubstantial.

Defendant initially withheld documents in full, pursuant to Exemption 7(A), because of an ongoing investigation that was not formerly closed until after Plaintiff filed its

Complaint.  Defendant could have litigated the propriety of its withholdings pursuant to Exemption 7(A), and required Plaintiff to renew its FOIA request after the investigation closed. Instead, after the investigation was closed, Defendant moved to stay proceedings in order to produce responsive documents.  It was not, as Plaintiff asserts, the "complaint that caused Defendant to produce documents in a reversal of its position at the administrative level to deny Plaintiff's FOIA request." (Pl.'s Mem. [Dkt. 77] at 4.)  Rather it was the closure of the administrative investigation that caused the production of documents in 2011.  Thus, the Court finds that Defendant never changed its position on the appropriateness of withholding documents pursuant to the ongoing administrative investigation. Defendant consistently demonstrated that it believed the documents should be withheld because of the investigation. Instead, what changed was the underlying fact that the investigation ended.

Defendant, however, did make a "voluntary" and likely "unilateral," change in its position about withholding and redacting company documents, documents that pertained to Mr. Hopmeier, and a handful of other documents.  In changing its position about the scope of Exemption 7(C) and the appropriateness of withholding other documents, it produced documents in 2012.  Here, Plaintiff's claim is not

insubstantial, and, as a result, under the plain meaning of the text of the statute, Plaintiff also substantially prevailed because it obtained relief through a voluntary or unilateral change in position by the agency.  Thus, the Court finds that there is an additional alternative basis for finding Plaintiff eligible for attorneys' fees.

     ii.    <u>Entitlement to Award</u>

       "[A]n award of attorney's fees is not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA." *Nix v. United States*, 572 F.2d 998, 1007 (4th Cir. 1978).  In evaluating entitlement, the Court will begin with the four non-exclusive factors of the public benefit, benefit to plaintiff, the nature of the plaintiff's interest, and whether the government's withholding of the records had a reasonable basis in the law.  The factors reflect the following:

> [T]here will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA.  The Court should not ordinarily award fees under this situation unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior.

*Sabalos v. Regan*, 520 F. Supp. 1069, 1072 (E.D. Va. 1981)

(quoting S. Rep. No.93-854, 93d Cong., 2d Sess. 19 (1974)).

The Court begins by noting that it finds no basis for Plaintiff's allegations that Defendant has engaged in obdurate behavior in this case.  Rather Defendant's behavior has been to the contrary.  When Plaintiff filed suit there was an ongoing investigation that provided a legitimate basis for withholding documents pursuant to Exemption 7(A).  And, when the investigation was complete, Defendant voluntarily produced over 41,000 pages of documents.

Turning to the public benefit, "[a]ttorney's fees are appropriate where a FOIA response helps protect the public's interest in the 'fair and just' administration of justice." *Jarno v. DHS,* 365 F. Supp. 2d 733, 739 (E.D. Va. 2005).  Yet, "[it] is doubtless true . . . that the successful FOIA plaintiff always acts in some degree for the benefit of the public." *Sabalos,* 520 F. Supp. at 1072 (quoting *Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir. 1978).  Where the public interest is secondary to a private interest the Court must evaluate whether the public interest is sufficient to trigger the award of attorney fees.  *See id.* at 1072.  "The degree of dissemination to the press and public are recognized as important factors in determining whether a public benefit exists." *Jarno,* 365 F. Supp. 2d at 738.

Here, Plaintiff's FOIA request was for copies of all records pertaining to UCI or Mr. Hopmeier.[2]  UCI is a professional engineering and technical consulting firm specializing in issues related to counter terrorism, preparedness response operations, and national security.  Mr. Hopmeier is the president of UCI.  Plaintiff submits that it had for years been a victim of Defendant's "fruitless and invasive investigations," and that it sought disclosure of documents to "shed public light on Defendant's improper investigation methods."  (Mem. in Supp. Mot. for Attorneys' Fees (MAF) [Dkt. 77] at 6.)  Defendant argues that Plaintiff fails to identify any document produced pursuant to the FOIA request that sheds light on allegedly improper investigation methods.  (Opp. MAF [Dkt. 81] at 24.)  Plaintiff points only to an affidavit produced supporting a search warrant that it argues would be beneficial to the public's general understanding of its Fourth Amendment rights.  (Pl.'s Resp. [Dkt. 82] at 10.)  Plaintiff critically fails, however, to identify any specific improper investigation methods.  General allegations of impropriety after production are alone insufficient.  Although at the hearing Plaintiff asserted that Mr. Hopmeier is releasing information to those who review the investigations, there is no other evidence

---

[2] The parties agree that although Williams Mullen is nominally the Plaintiff in this case because it originally filed the FOIA request on behalf of Michael Hopmeier and UCI, the latter are the real parties in interest and the proper focal point of the attorneys' fee inquiry.

Plaintiff plans to disseminate any information to the public. And, it is not obvious that the public has any general interest about the two investigations into UCI or Mr. Hopmeier. "Minimal, incidental and speculative public benefit will not suffice." *Aviation Data Service v. Federal Aviation Admin.*, 687 F.2d 1319, 1323 (10th Cir. 1982).

Turning next to the commercial benefit to Plaintiff and Plaintiff's interest, "[i]n weighing the commercial benefit factor, the Court should consider whether the party requesting fees was indigent or a non-profit public group and not a large corporate interest." *Jarno*, 365 F. Supp. 2d at 739. Defendant persuasively argues that Plaintiff's interest is plainly of a commercial nature, and points out that Plaintiff has done business with agencies involved in the investigations. (Def.'s Opp. [Dkt. 81] at 22-23.) The two investigations related to expenditures of government funds advanced to UCI for the performance of work and the documents include things such as audits and purchase agreements. (*Id.* at 21.) Plaintiff counters that it did not use FOIA to obtain data related to a competitor or as a substitute for discovery in private litigation with the government, yet neither of these things are dispositive. Here, there is sufficient evidence to say that Plaintiff has a commercial interest in documents related to investigations about its use of government funds. And,

Plaintiff's argument that in being a "small, private business," it is "more akin to a nonprofit public interest group than a large corporate entity" is unavailing in this context. (*See* Pl.'s Mot. at 6.)  Plaintiff fails to explain why UCI is like a public interest group, and although UCI might not be a "large" business, the nature of the interest nonetheless appears to be predominantly commercial.

Finally, Defendant asserted a reasonable basis for initially withholding the documents: the existence of an ongoing investigation.  And, Defendant demonstrated responsiveness to the FOIA request once the investigation was concluded.  In reviewing the relevant factors related to entitlement, and in considering FOIA's purpose, the Court finds that Plaintiff is not entitled to attorneys' fees in this case.

### IV.  Conclusion

This Court will therefore grant Defendant United States Army Criminal Investigation Command's Motion for Summary Judgment and deny Plaintiff's Motion for Attorneys' Fees.

/s/
_____

July 6, 2012                    James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE